Good morning. My name is Bridget Alvarez and I represent the petitioner Josue Lara-Soto. With the court's leave, I would like to reserve one minute for rebuttal. You have the clock in front of you, just keep track of your time. Thank you. Going first to credibility, the board's affirmance of the adverse credibility determination rested on one omission and there are four reasons why this was an error of law. First of all, the board mischaracterized testimony in that the arrested hitmen admitted to the petitioner, not police, whom had hired them. Now following Shrestha, the board should have examined petitioner's testimony carefully and his declaration to determine if in fact any inconsistency existed. In his declaration, he said, petitioner said, the hitmen admitted they were paid to kill me and the cousin's estranged husband has paid people to murder. Also, this was a Soto-Loretta error because the previous explanation that petitioner provided on direct was ignored or that they told me that they had been hired to kill me. Secondly, the board's faulting a petitioner for failure to include his police as well as the police report is in contravention of Wren. Wren understood that omissions can happen in context of violence. Moments earlier, petitioner had a gun held to his head and he had only narrowly escaped two attempts on his life within one month of each other. Lai and Z, I'm sorry, Lai and Z apply Wren to cases where petitioners were not found credible, where lack of credibility was part of an overall credibility determination, and on review, each of the other immigration judges' reasons for adverse credibility were set aside. Lai also stated that no substantial weight was given to omissions as opposed to inconsistencies. In his declaration, in his asylum application, and in statements to an ICE officer, petitioner consistently said, my elaboration of the name of who that person was. Third, the board attempted to insulate the immigration judge's decision by acknowledging impermissible speculation regarding the failure of petitioner's cousin to testify. However, the board cannot parse out speculation from the immigration judge's decision since he says six times it is an important detail and that the first reason mentioned by the immigration judge to as a foundation for his adverse credibility determination was that the failure of the cousin of the cousin to testify but clouded or cast doubt rather on not only the cousin's case but also petitioner himself. I'm sorry, I didn't follow that. The immigration judge started his determination or analysis of credibility based on the failure of petitioner's cousin to present herself or to present a declaration regarding the circumstances of what had happened to her in Guatemala. Clearly, the immigration judge found that determinative. Did the BIA adopt this? The BIA did not. The BIA in 2002 said that they recognized that that was speculation on part of the immigration judge and attempted to take that out or say that we would not uphold that finding but we have other bases on which to affirm. Right, so BIA is entitled to do that, right? And we review the BIA, not the IJ. So finding fought with the BIA in a way that the BIA recognized he heard and did not adopt doesn't help your case, does it? Well, this panel's scope of review, petitioner would argue, also includes the immigration judge's decision since Wren, Lai, and... But if we review the BIA's decision and the BIA disavowed this aspect of the IJ's decision, how does it help you? I mean, that part of the IJ's decision has already been repudiated by the reviewing body that we review. So, I mean, you can flog that horse, but I'm not sure what it gains you. Petitioner contends that it continues to taint the adverse credibility determination, although the board attempted to parse it out and find... Counsel, Judge Gould, if I could really help me if you focused on the aspects that the board relied on, then explain why that's, in your view, not permissible. I will, Your Honor. So the last reason why this was an error, why this, the affirmance of the adverse credibility determination, relying on the one admission was error of law, was that the board found that Petitioner did not meet his burden of proof, given the absence of credible testimony. Now, there was no board finding on corroboration, but again, Lai and Z allow us to look to the immigration judge's decision to determine what that basis was. And in the immigration judge's decision, we see that he demanded corroboration on the day of the merits hearing, which does not comport with due process, nor this court's decision in Wren, since there was no notice nor opportunity to provide this witness. And Lai and Z also reached the same result, that there can be no failure to corroborate if there's no notice given to Petitioner to provide this additional evidence. For the first time on the day of the merits hearing, the immigration judge told Petitioner that his credibility was in doubt. What are we supposed to do, if anything, with the motion to reopen? That is to say, we have the petition for review from the denial, but we also have the motion to reopen. And in the motion to reopen, many of the things that the IJ and BIA found lacking are now supplied. That is to say, we now have evidence that, in fact, the brother-in-law was, in fact, well-known. We now have a statement from the sister and so on. How does that help you? Well, the board ignored, first of all, the motion to reconsider portion of the motion to reopen and reconsider. And it skipped over the allegations of error regarding adverse credibility, and just merely said there was no demonstration of any fact, error in fact or law, but provided no analysis regarding that. With respect to... Let me say it this way. If the evidence that is presented in the motion to reopen had been presented at the initial hearing, this case for me is a fairly obvious case that the adverse credibility finding is wrong, because the evidence presented in the motion to reopen entirely undercuts the in light of what we're now seeking to present? Yes, that's correct. And Petitioner would request that that remand be with instructions that Petitioner be deemed credible, since there was no substantial evidence for the adverse credibility finding. Well, why should we say that, rather than just say, hey, there's some evidence that really was left out, and perhaps partly because of the deficiency of the attorney, and perhaps partly because of the failure of the IJ to say, you know, I'm going to hold against you unless you do X, Y, or Z. Let's just remand this on an open record. Petitioner would be open to that. And I will save the rest of my time for rebuttal. Thank you. Okay, thank you. May it please the Court, Jeremy Byland on behalf of the Respondent. To go to your question, Judge, to begin with about the motion to reopen, I don't believe that the motion to reopen can satisfy... I don't believe the Board abuses discretion in determining that Petitioner failed to show prejudice by the documents that were submitted on the motion to reopen. So why is that? I can understand. I thought your argument was going to be, well, he had his chance, and this is not evidence that was previously unavailable. I will argue that as well. But let me hear your argument, which I think the argument you just made, on first blush, I don't agree with that. So tell me why, if this evidence were now presented, so we had the full panoply of evidence, including the evidence presented in the motion to reopen, that nonetheless an adverse credibility finding is supported. So the two underlying decisions by the Immigration Judge, we have a nexus, a no-nexus decision, and an adverse credibility decision. And I think that the statement provided by the Cousin actually wouldn't change the outcome. If you look at the account... Wouldn't change the outcome because he's still unbelievable, or for some other reason? He's still unbelievable. If you look at 526 in the record, the Cousin's account of the January 2007 shooting bears no relation to Petitioner's testified account of the 2007 shooting. So in fact, if this evidence were before the Immigration Judge, the adverse credibility decision actually becomes stronger in my view. So she wrote at 526 that in that attack, that Petitioner hit the gunman with a garage door, and then was able to flee and hid behind a pole, and that the gunman fired all of their ammunition. And then during that gunfire, there was an exchange in which Petitioner asked, who sent you to kill me? Was it Cabrera? And the gunman replied, yes, it was Cabrera. You compare that to page 717 of Petitioner's testimony about the January 2004 shooting, and his testimony is that he was shot at, he fell down, a gun was held to his head, and they said, now you're going to die, that he kicked the gunman's leg, and then he fled and they fired at him. Two very completely different stories about that shooting. I think that would actually make the adverse credibility decision stronger. And so I don't think that even if this... How about the notoriety of Cabrera? There is that evidence in the record, Your Honor. But I think the key omission that led to the adverse credibility determination wasn't the notoriety of Cabrera, and I think that it's that omission of that fact. And I can't think of a fact that's more pivotal to this case than that omission by the gunman on that day. Counsel, Judge Gould, if I could interject. Sure. On the point you're making right now, what's the significance of the fact that the petitioner in his asylum application and other statements, although he didn't initially mention the name Cabrera, didn't he say that the shooting was caused by the husband of his cousin? Your Honor, the language in the asylum application and all the declarations up to the testimony was that there was a belief that the cousin's husband was to blame, and that it was alleged. Those are the words that were used, belief and alleged. That is different than his testimony before the immigration judge that all of a sudden he is certain that it's the cousin's husband because the gunman told him on the day that it was the cousin's husband. And I think that's the critical omission, and that's the point that we believe is substantial evidence supporting the adverse credibility determination. So the inconsistency is that in his asylum application he said it was alleged that this was the husband, but in his testimony he says it with certainty because he says that's what the hitman told me. Yes, Your Honor, I believe that's an inconsistency, and it's that omission of that statement that the gunman told me on that day that it was Cabrera that we believe is substantial evidence supporting the adverse credibility determination. And again, I don't think that the statement from the cousin can change that adverse credibility determination because her description of the shooting is actually completely different than petitioners, and would actually have supported the adverse credibility determination. Back to your original question, Your Honor, about whether I was going to defend this on being originally available. We have evidence in the record that Petitioner called his cousin and asked her to help him in his case, and that she declined. And so there's no evidence in the record that suggests that this could have come in in the original hearing. Well, that may excuse the failure to present on the first. I'm not sure that helps you. That is to say, as I understand it, at least according to what's in the record, she was, for some reason, rightly or wrongly concerned that if she appeared, this might jeopardize her own asylum application. Now, whether that's true or not, I don't know. As it conflicts with his testimony. Well, but this was her application, not his. But if she says, I can't come, I won't come, that means it's unavailable at the time of the hearing. Correct. So it's not his fault that he brings it up only later. So that undercuts any argument you might have of this was available evidence that he could have presented first time around. So I think what you're, there's a difference, I think, between the ineffective assistance of counsel motion to reopen and maybe the motion to reconsider. So I think we have to parse that out. Well, as I understand the motion to reopen, it's partly based upon I've got evidence that was not presented before. Correct. But I think it helps us in the motion to reconsider for ineffective assistance of counsel because. Yes. I'm much more interested in the motion to reopen in the sense of there's some evidence here that was not in front of the IJ that, speaking only for myself, I'd prefer the IJ have in front of him or her all the available evidence about the case. Correct. So I think in the motion to reconsider, you're right, Your Honor, in the fact that that might suggest unavailability. But we still have this prejudice issue that even if it was admitted, it conflicts and it doesn't solve the nexus issue of the case either. When you say nexus issue, what are you talking about? So the secondary finding of the board, besides adverse credibility, was that there was a lack of evidence about a nexus between the harm alleged and the family, the PSG, which is the family group. And the reason that there's that lack of nexus is the only concrete evidence we have that the shootings against Petitioner were by Cabrera, ordered by Cabrera, is that incredible testimony about what the gunman said in the car. Well, that all goes back to credibility rather than nexus. So if you assume credibility, the nexus problem seems to disappear. I don't think so because there's evidence in the record about the reason that Cabrera was attacking certain individuals was because they were acting against his financial interest. And this actually comes out in the Cousin's Declaration and the fact that they were running a business that was in direct competition with Cabrera's business. And if you look at who has actually murdered Petitioner's father, or excuse me, the cousin's father and his brother, there's evidence in the Cousin's Declaration that they were engaged in selling black market goods in a business that was directly conflicting with. But I'm not sure that destroys the nexus about family group. There's always going to be a reason if somebody's after members of a family why they're doing it. This one turns out to be partly financial. I think it's still because they're members of the family. I think if you look at the Santos-Limos case, Your Honor, it talks about how similarly situated family members remain in the country unharmed. But that undermines the family PSG argument. So here we have. You mean he has to kill all the members of the family? Well, Your Honor, I think it just under, I don't think that that's true. But if you look at who's most similarly situated to Petitioner in Guatemala, it's his father, his mother, his sister, and even his son, all of which remain unharmed. And that just undermines the argument that it's on account of family. And gives credence to the fact that it's on account of this economic interest. And the other thing I'll say is we're reviewing this through the substantial evidence lens. And so if there are facts in the record that support the IJ's determination, even if there's a competing story, as you're saying, the family, it can't compel the conclusion that the immigration judge was incorrect. Yeah, but when you're saying that, are you talking about the record made at the hearing, or are you talking about the record that would be made if we had the evidence now sought to be produced as part of the motion to reopen? So the motion to reopen is reviewed under the abuse of discretion. I understand that. Yeah, and so what I'm saying is if you look at the record of what was before the immigration judge, he cited the fact that these close family members were unharmed in that substantial evidence to support. There's also in that record. No, I understand that. I was just trying to figure out what you were saying when you were saying there's substantial evidence. In that statement, you were referring to the evidence that was presented to the IJ. That's correct, Your Honor. Okay, I got it. So assuming that the ineffective assistance counsel claim, we put that aside, what is the standard for a motion to reopen? If you come up with new evidence, what is the standard? Well, I think the standard is that you have to show both that it was previously unavailable and that there was prejudice. It comes out as a due process clause claim for relief. So a classic element of that is prejudice. And how is the prejudice standard articulated? In this court, it may have changed the outcome of the case. It's not a very high standard. It's not, Your Honor. But, again, I think if you look at the conflicting stories, and I don't think it solves the nexus problem, I don't believe that the Board abuses discretion because there's nothing arbitrary or rational or contrary to law about its decision. Okay, thank you. If you have a little time left for rebuttal, you may take it. So in the Board's denial of the motion to reopen, the Board impugned the credibility of Petitioner's cousin in saying that her declaration was unsourced and not based on firsthand knowledge. And now you have the Office of Immigration Litigations accepting it as true and citing it as an inconsistency. So that would be a departure from how the Board treated that declaration. Also, with respect to a particular social group of a family, the Board issued its decision or denial on the motion to reopen prior to its decision in matter of MEVG. So there was no discussion about social distinction, no discussion about particularity. And there was also in the denial of the motion to reopen almost a tacit acceptance by the Board of ineffective assistance since they immediately went to a prejudice analysis. They did not discuss whether or not there was indeed ineffective assistance. They merely skipped to prejudice. And it almost seemed in the denial of the motion to reopen that the Board was attempting to fix its errors from the first decision on direct appeal. And that is something that this Court does not allow in accordance with Dussaint. The Board cannot subsequently cure errors from its first decision by denying a motion to reopen alleging no prejudice since the direct appeal did not receive, or I'm sorry, the review or the order. Standard of review for a motion to reopen is abuse of discretion, or I'm sorry, is discretion. And on direct appeal, many items are reviewed de novo. So the standard for denying a motion to reopen, you get a much less stringent standard than on direct appeal. And the merits of the withholding claim were only analyzed within this context of prejudice. Counsel, Judge Gould, I think you might be over your time. But I hope Judge Kaczynski won't mind if I ask you one quick question that I think you could answer in 20 or 30 seconds. That is, how do you respond to the government's argument that there is a material inconsistency in what your client presented in his asylum application where he says, I think that the gunmen were hired by the husband of my cousin. And in the trial testimony or hearing testimony, where he says, I know it's Cabrera, because that's what the hit man told me. Well, a petitioner would see that not as a material inconsistency, but rather a manifestly trivial one. So the difference for someone who is a petitioner, not very educated, saying I know versus I believe, there would not be that much of a logical leap, not much of a difference between those two terms. In both of those statements, he's naming who he believes is responsible for the two attacks on his life and for the killings of other members of his family. Thank you. Thank you. Okay, thank you. Case is signed. We stand submitted.
judges: Kozinski, W. Fletcher, Gould